2023 IL App (1st) 211307-U

No. 1-21-1307

Order filed September 22, 2023

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 12674 |
| | ) | |
| EDWIN ORTIZ, | ) | Honorable |
| | ) | Diana L. Kenworthy, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE LYLE delivered the judgment of the court.
Presiding Justice Mitchell and Justice Mikva concurred in the judgment.

**ORDER**

¶ 1   *Held*: We affirm the judgment of the circuit court over defendant's contentions that he did not execute a valid jury waiver, that the court erred in restricting his cross-examination of a witness, that the court erred in viewing the recording of his interview with a police detective outside of his presence, and that the State failed to prove beyond a reasonable doubt that he caused the victim great bodily harm.

¶ 2   Following a bench trial, defendant Edwin Ortiz was found guilty of aggravated battery, unlawful restraint, and reckless conduct, then sentenced to two years of probation. The charges stemmed from an altercation between Mr. Ortiz and his then-girlfriend, Corrina Colon, in July

2018. During the altercation, Mr. Ortiz caused injuries to Ms. Colon's face and stepped on Ms. Colon's minor child, H.C., injuring his leg.

¶ 3     Mr. Ortiz contends that this court should reverse his convictions and remand for a new trial where the trial court failed to properly ensure that Mr. Ortiz knowingly and voluntarily waived his right to a jury trial. Mr. Ortiz points out that the trial court failed to admonish him of his right to a jury trial and obtain his jury waiver before the commencement of the trial, only acknowledging its error on the second day of trial. Several witnesses had already testified at the bench trial prior to the discovery of the error. Mr. Ortiz also contends that the court erred in restricting his cross-examination of Ms. Colon regarding a pending misdemeanor charge. Next, Mr. Ortiz contends that the trial court erred in viewing the electronically recorded interview (ERI) he gave following his arrest in chambers because the court considered evidence that was not adduced at trial and did not inform him that he had the constitutional right to be present while the court watched the video. Finally, Mr. Ortiz contends that the State failed to prove beyond a reasonable doubt that he caused great bodily harm to Ms. Colon where there was insufficient evidence presented as to her injuries and the treatment she received. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 4                                   I. BACKGROUND

¶ 5     Prior to trial, the parties discussed whether the case would be set for a bench trial or a jury trial. At several status hearings, defense counsel represented that they were asking for a "bench" trial. On one court date, Mr. Ortiz answered the court's inquiry about the type of trial before his counsel could respond, stating simply, "Bench." However, before the trial commenced, the court failed to admonish Mr. Ortiz regarding his right to a jury trial and failed to obtain a signed jury

waiver from him. The court recognized its mistake on the second day of trial, after the State had presented three witnesses, and admonished Mr. Ortiz. In admonishing Mr. Ortiz, the court stated:

"THE COURT: So, Mr. Ortiz, on the last court date, I forgot to officially ask you about waiving your right to a Jury Trial.

So, let's talk about that now. I know your attorney has talked with you about it a little.

When you have a Trial, you have a right to either a Jury Trial or Bench Trial; and a Jury Trial will be where 12 people that your attorney, and the State's Attorney, and you would pick; and they would hear all of the evidence in the case; and they would decide if the State had proved you guilty beyond a reasonable doubt.

The Jury's decision would have to be unanimous. Meaning, all 12 of those Jurors would have to find you guilty, before a verdict could be entered against you.

Do you understand what a Jury Trial is?

[MR. ORTIZ]: Yes.

THE COURT: Okay. So, I am showing you an Order—and your attorney had thought that you [had] done a Jury waiver on a previous date; and we realized today, there had not been one done.

So, we put it back to—this is day two of your Trial—to October 21st.

Is that your signature?

[MR. ORTIZ]: Yes, it is.

THE COURT: when you signed this document today, were you waiving or giving up your right to have a Jury Trial?

[MR. ORTIZ]: Yes.

THE COURT: Okay. Instead, do you wish to have a Bench Trial—to continue your Bench Trial, which is a Trial in front of me?

[MR. ORTIZ]: Correct.

THE COURT: Is that what you wish to do?

[MR. ORTIZ]: Yes."

¶ 6     At the bench trial, Ms. Colon acknowledged that she had a pending misdemeanor charge that was unrelated to the current case, but the State had not made her any promises or threats with regard to that charge in exchange for her testimony against Mr. Ortiz. Ms. Colon testified that she had two children, G.C. and H.C., who were five and four years old, respectively, at the time of trial in October 2020. She testified that she began dating Mr. Ortiz in the middle of 2017. Mr. Ortiz was not the father of G.C. or H.C. On July 13, 2018, Mr. Ortiz asked Ms. Colon and her children to spend the night at his house. Ms. Colon packed a bag and then she and the children walked to Mr. Ortiz's house with him. Ms. Colon and Mr. Ortiz took H.C. and G.C. to play at a park across the street from Mr. Ortiz's house. Ms. Colon testified that H.C. was playing normally and had no trouble walking. After the park, they returned to Mr. Ortiz's house to take a shower when H.C. started crying. Mr. Ortiz said that if H.C. kept crying, he was going to hit him, but Ms. Colon told Mr. Ortiz that he could not hit H.C. Mr. Ortiz told Ms. Colon that if she did not like the way he was talking to H.C., then they could leave his house. Ms. Colon collected their belongings and picked up H.C., but Mr. Ortiz stood in front of the door, blocking the exit.

¶ 7     Mr. Ortiz started to get "very hostile" and spoke in a "very aggressive" tone of voice. Ms. Colon put H.C. down and backed away from Mr. Ortiz. She told Mr. Ortiz that she was scared and

ran into Mr. Ortiz's younger sister's room. Ms. Colon woke up Mr. Ortiz's sister and asked her to call 9-1-1. Mr. Ortiz's sister ran into her mother's room and Mr. Ortiz followed Ms. Colon. Mr. Ortiz grabbed Ms. Colon by the hair and dragged her out of the room. Mr. Ortiz then hit Ms. Colon multiple times with his hands on her face and upper body. Ms. Colon hit Mr. Ortiz in an attempt to defend herself and the two started fighting in the doorway.

¶ 8 While they were fighting, Ms. Colon noticed that H.C. was on the ground in between their legs. Ms. Colon asked Mr. Ortiz to stop fighting because she wanted to pick up H.C., but Mr. Ortiz did not stop. Ms. Colon observed that Mr. Ortiz was stepping on H.C.'s legs. Ms. Colon attempted to protect H.C. while Mr. Ortiz hit her. Mr. Ortiz eventually stopped hitting her and Ms. Colon ran back into Mr. Ortiz's room to retrieve her phone, but before she could leave, he started hitting her again. Mr. Ortiz then dragged Ms. Colon outside. Ms. Colon took out her phone to call 9-1-1, but Mr. Ortiz took the phone from her and broke it. Mr. Ortiz then started hitting Ms. Colon again and verbally abusing her for involving his sister in the fight. Mr. Ortiz eventually stopped hitting her and then she went inside with him.

¶ 9 H.C. and G.C. were asleep on Mr. Ortiz's bed so Mr. Ortiz and Ms. Colon slept on the floor. In the morning, they had sex even though Ms. Colon did not want to. Afterward, Ms. Colon woke up her children to take a shower. Ms. Colon observed that H.C. could not stand and was scared. H.C. started grabbing his ankle and Ms. Colon observed that it was bruised and swollen. Mr. Ortiz at first refused to let Ms. Colon take H.C. to the hospital, but he eventually agreed. They took the bus together and Mr. Ortiz got off first to purchase Ms. Colon a new phone. Ms. Colon rode the bus with her two children until they got off at a laundromat so that Ms. Colon could use

the phone to call her mother. Ms. Colon's mother arrived shortly thereafter and took them to the hospital.

¶ 10   At the hospital, doctors took X-rays of Ms. Colon's head and of H.C.'s foot. Ms. Colon testified that she was experiencing pain in her entire upper body, with "a lot" of pain around her eye. Ms. Colon did not receive any other treatment at the hospital after the X-ray. Ms. Colon testified that she lied to the doctors about the cause of her injuries, telling them that she had been jumped. Ms. Colon testified that she lied about the cause of her injuries because Mr. Ortiz had threatened her.

¶ 11   Ms. Colon did not call the police when she returned home from the hospital, but 10 days later on July 24, 2018, she went to the police station to file a police report and obtain a restraining order. At the police station, they took photographs of her face and body and took her statement. After the incident, Mr. Ortiz repeatedly attempted to contact Ms. Colon through Facebook. Mr. Ortiz created multiple profiles in an attempt to contact Ms. Colon, but Ms. Colon blocked each profile. In the messages, Mr. Ortiz apologized for hurting her and said that he still loved her. He also apologized for hurting H.C. The State introduced photographs of the Facebook messages into evidence. The State also introduced the photographs of Ms. Colon's injuries into evidence.

¶ 12   Ms. Colon acknowledged that in July 2018, she had "some involvement" with the Department of Children and Family Services (DCFS) that stemmed from an incident where Mr. Ortiz called DCFS. After that incident, H.C. and G.C. had to live with Ms. Colon's mother. Ms. Colon was able to see her children during this time, and her children were eventually returned to her after she completed parenting classes.

¶ 13    Ms. Colon also testified about an incident that occurred on November 12, 2017. On that night, she visited Mr. Ortiz's house and then went to sleep. She was awoken when Mr. Ortiz "smacked" her in the face with his hand. Mr. Ortiz was holding her phone and accused her of contacting another man. Ms. Colon observed that Mr. Ortiz was "[v]ery hostile and angry." Ms. Colon contacted the police about the incident and they took photographs of her injuries. The photographs were admitted into evidence. Charges were filed against Mr. Ortiz based on the incident, but they were dropped when Ms. Colon decided not to cooperate.

¶ 14    On cross-examination, Ms. Colon acknowledged that when she and Mr. Ortiz took the children to the park before the incident on July 13, 2018, they shared a pint of Hennessey. Ms. Colon testified that she drank less than half the bottle and was not drunk or "even tipsy." Defense counsel also asked Ms. Colon about her pending misdemeanor charge, but the State objected. The parties held a conversation off the record and then the court stated on the record that it would take notice of Ms. Colon's pending charge, but it did not want her to testify about the charge.

¶ 15    Quintina Rodriguez, Ms. Colon's mother, testified that in July 2018, Ms. Colon was dating Mr. Ortiz. On July 14, 2018, Ms. Rodriguez received a phone call from Ms. Colon, who was crying. Ms. Rodriguez went to meet her and observed that she and H.C. had been "physically abused." Ms. Colon had two black eyes and one of her eyes was bloodshot red. H.C. had a "knot" on his forehead and had a bruised and swollen ankle. Neither Ms. Colon nor H.C. had been injured the last time Ms. Rodriguez saw them. Ms. Rodriguez told them to go to the hospital because H.C. was unable to walk. Ms. Rodriguez drove them to the hospital, but did not stay while they were being treated because had to take care of Ms. Colon's daughter, G.C. Ms. Rodriguez returned to

the hospital later that day to pick up Ms. Colon and H.C. Ms. Rodriguez noted that H.C. had a "false cast" and a wrap around his leg.

¶ 16    Dr. Diana Iwanik testified that she was a radiologist and on July 14, 2018, she reviewed a CT scan for Ms. Colon. Dr. Iwanik noted that Ms. Colon had multiple facture lines along the floor of her right orbital bone. Dr. Iwanik also reviewed H.C.'s X-ray and noted that he had a fractured tibia. Dr. Iwanik testified on cross-examination that she only reviewed the radiology images and did not know the cause of Ms. Colon's orbital bone injury or H.C.'s fractured tibia.

¶ 17    Chicago Police Detective Carlos Mayas testified that on July 26, 2018, he was assigned to Ms. Colon's case. He reviewed the initial preliminary investigation and the original case incident report. Detective Mayas then interviewed Ms. Colon and Ms. Rodriguez about the incident and learned that Mr. Ortiz was the offender. Mr. Ortiz was arrested several weeks later on August 14, 2018, and Detective Mayas spoke with him at the police station. Mr. Ortiz identified two other witnesses for Detective Mayas: his mother, Maria Barrera (Ms. Barrera), and his aunt, Veronica Barrera (Veronica).

¶ 18    Ms. Barrera testified on Mr. Ortiz's behalf that in July 2018 she was living in the apartment where the incident in this case occurred with Mr. Ortiz, her husband, and her 12-year-old daughter. On the night of the incident, she was at home with her husband and daughter when Mr. Ortiz, Ms. Colon, and Ms. Colon's children came into the apartment. Around midnight, Ms. Barrera heard Mr. Ortiz and Ms. Colon arguing. Ms. Barrera came out of her room and observed that Ms. Colon was intoxicated. She could tell Ms. Colon was intoxicated because she smelled alcohol on her breath and saw that she was having trouble balancing while walking. Ms. Colon was being aggressive toward Mr. Ortiz because she wanted to leave the apartment with her children. Mr.

Ortiz was holding Ms. Colon, preventing her from leaving because she was drunk. Ms. Barrera never saw Mr. Ortiz strike Ms. Colon or step on H.C.

¶ 19    Ms. Barrera took the children into Mr. Ortiz's room and they fell asleep on his bed. When she put the children to bed, she did not observe that H.C. had any injuries. Ms. Colon and Mr. Ortiz then went into Mr. Ortiz's bedroom and went to sleep. Ms. Barrera did not observe any further altercations between the two the following day.

¶ 20    Mr. Ortiz testified on his own behalf that prior to being arrested in connection with this case, he was employed as a tattoo artist. He met Ms. Colon in March 2017 when she was searching for a tattoo artist. Mr. Ortiz first testified regarding the incident that took place on November 12, 2017. Mr. Ortiz testified that on that date, he purchased Ms. Colon a bottle of alcohol and she became intoxicated and "couldn't control herself." Ms. Colon became angry at Mr. Ortiz because she believed that he was talking to other girls on his phone. Mr. Ortiz testified that it was 1 a.m., but Ms. Colon attempted to leave with her children because she was angry. He testified that the children were only wearing diapers when Ms. Colon took them outside into the cold weather. He called DCFS and the police.

¶ 21    With regard to the July 13, 2018, incident, Mr. Ortiz testified that before meeting with Ms. Colon, he purchased a pint of Hennessy and some marijuana for her. He went to her house and they walked to his house with her children. On the way, Ms. Colon drank "more than half" of the bottle of Hennessy. They arrived at the park across the street from his house around 10:30 p.m. Mr. Ortiz did not notice any injuries to the children at the park or on the walk over. Ms. Colon and Mr. Ortiz continued drinking while the kids played at the park, but they did not smoke the marijuana because Mr. Ortiz did not smoke in front of the children.

¶ 22    They left the park around midnight and walked to Mr. Ortiz's house. Ms. Colon started to get the kids ready for a bath while Mr. Ortiz cooked dinner. While he was cooking dinner, he heard H.C. start to cry. Mr. Ortiz asked Ms. Colon what happened, but she did not respond. Mr. Ortiz asked H.C. what happened and he stopped crying, looked at Ms. Colon, and then started crying again. Mr. Ortiz asked H.C. if Ms. Colon hit him and Ms. Colon became angry. Mr. Ortiz testified that Ms. Colon was intoxicated. Ms. Colon yelled at Mr. Ortiz, but he testified that he did not yell at her and was trying to calm her down.

¶ 23    Ms. Colon told Mr. Ortiz that she was going to call the police, but she could not enter the passcode on her phone because she was intoxicated. She then threw the phone on the bed and Mr. Ortiz picked it up. Ms. Colon went into Mr. Ortiz's sister's room and told her to call the police. Mr. Ortiz told Ms. Colon to calm down because she was going to get him in trouble. Ms. Colon pushed Mr. Ortiz and he asked her to go outside so they could talk. He denied striking Ms. Colon and he denied striking or stepping on the children.

¶ 24    Outside, Ms. Colon was calm, but Mr. Ortiz could tell that she did not want to be there. Mr. Ortiz did not prevent her from leaving, but Ms. Colon did not leave because her children were inside. Mr. Ortiz did not want her to leave with the children because it was late at night and she was drunk. Ms. Colon agreed to leave the children with Mr. Ortiz. As Ms. Colon was walking back into the house, she fell and hit her head on the ground. Mr. Ortiz thought it would help her feel better if he sprayed the hose on her head. Back inside, Mr. Ortiz told his mother to put the children to sleep. Ms. Colon decided to stay with her children at the apartment and they went to sleep on the floor.

¶ 25    In the morning, Mr. Ortiz wanted to have sex, but Ms. Colon did not, so he got up and the two of them smoked marijuana before the children woke up. Ms. Colon apologized for her behavior the night before. They then woke up the children, got ready, and got on the bus. Mr. Ortiz did not see any injuries to Ms. Colon or the children. Mr. Ortiz did not hear from Ms. Colon until about a week later when she called him from a private number. He denied attempting to contact her on Facebook or creating fake Facebook accounts in an effort to contact her. He did attempt to call her after the incident, but her phone was unavailable.

¶ 26    When he spoke to Ms. Colon after the incident, she said that she missed him and wanted to see him. They met up the following day and Ms. Colon told him that she was working and the children were with her mother. Ms. Colon did not tell Mr. Ortiz about H.C. being injured. A few days later, Mr. Ortiz learned that Ms. Colon had obtained an order of protection against him. She told him that DCFS made her get the order. Mr. Ortiz acknowledged that he was arrested in August 2018, but he denied telling the detectives that he hit H.C. or Ms. Colon.

¶ 27    On cross-examination, the State impeached Mr. Ortiz's testimony with his statements to police in his ERI after his arrest on August 14, 2018. The State played portions of the ERI in open court to impeach Mr. Ortiz. Mr. Ortiz acknowledged that he never told the detective that the argument with Ms. Colon started because he accused her of hitting H.C. Mr. Ortiz acknowledged that he also told the detective that Ms. Colon was not drunk during the altercation. He acknowledged that he told the detective that H.C.'s leg was injured during their argument when he grabbed Ms. Colon and pulled her out of his sister's bedroom. H.C. was behind them and they both fell on top of him, and he started to cry. Mr. Ortiz denied, however, sending the Facebook messages that had previously been entered into evidence where he apologized for hurting H.C.

¶ 28    Mr. Ortiz further acknowledged that he told the detective that he grabbed Ms. Colon's phone and broke it because he did not want her to call the police. Mr. Ortiz testified that he lied to the detective about what happened because he did not want Ms. Colon to lose her children. Mr. Ortiz testified that he met with Ms. Colon on July 30, 2018, and she told him to lie to the police.

¶ 29    The State called Detective Mayas in rebuttal who testified that he spoke with Ms. Barrera on August 14, 2018. Ms. Barrera told Detective Mayas that on July 13, 2018, she did not smell alcohol on Ms. Colon. She further told him that following the altercation that night, she saw Mr. Ortiz using a water hose to wash blood off of Ms. Colon's head. During the altercation, Ms. Barrera saw Mr. Ortiz and Ms. Colon "punching" each other, and that she called her sister, Veronica, because she could not control them. Detective Mayas also testified that he took the statement from Mr. Ortiz on August 14, 2018, that was memorialized in the ERI. The State moved the entire ERI into evidence and defense counsel raised no objection. The court stated that because it was late in the day, it would need to watch the ERI in chambers. The State clarified that the defense and no objection to the court watching the ERI, and defense counsel stated he had no objection.

¶ 30    Following closing arguments, the trial court recounted the evidence presented and stated it found Ms. Colon credible, but did not find Mr. Ortiz or Ms. Barrera credible. The court noted the inconsistencies between their testimony at trial and the statements they gave to Detective Mayas in August 2018. Based on the evidence presented, the court found Mr. Ortiz not guilty of aggravated battery to H.C. because it determined that the injury to H.C. was accidental. For the same reasons, the court found that Mr. Ortiz was not guilty of aggravated domestic battery to H.C. The court found, however, that Mr. Ortiz was guilty of reckless conduct because Ms. Colon told him that H.C. was stuck in the middle of their confrontation, but he continued to strike her anyway.

The court also found Mr. Ortiz guilty of aggravated domestic battery and unlawful restraint with regard to Ms. Colon.

¶ 31    Before sentencing, Mr. Ortiz's trial counsel withdrew and the court appointed a public defender to represent him for sentencing and posttrial motions. Mr. Ortiz's new counsel filed a motion for a new trial in which he contended, *inter alia*, that the trial court erred in considering facts not in evidence when it took notice of Ms. Colon's pending charge. Posttrial counsel further contended that the court erred in failing to admonish Mr. Ortiz and obtain his jury waiver prior to the commencement of the bench trial.

¶ 32    In denying Mr. Ortiz's motion, the trial court noted that Mr. Ortiz was correct that "initially there was not a jury waiver discussed." The court observed, however, that it admonished Mr. Ortiz of his rights and obtained his voluntary jury waiver while the trial was still ongoing. The court concluded: "So that mistake was corrected while the trial was still going on. He did not indicate in any way that he did not wish to proceed with a bench trial." With regard to the allegation that the court considered facts not in evidence, the court stated that it took notice of the pending charge because it did not want the defense attorney to ask Ms. Colon about the charge because of her rights against self-incrimination. The court stated that it "understood what the defense attorney was trying to do with that, and that was to further what his theory was; on one of his grounds of impeachment would be that this complaining witness had substance abuse issues." The court stated that it was "very aware" of the substance abuse issues because of the testimony of both parties drinking alcohol and smoking marijuana. The court therefore denied the motion for a new trial.

¶ 33    The matter then proceeded to sentencing. The court noted that the aggravating factors in this case were that Ms. Colon's injuries were "severe" and that H.C. was also injured "severely."

The court stated that the evidence that really "stood out" was Mr. Ortiz's ERI. The court noted Mr. Ortiz's anger and frustration and his "genuine lack of understanding of the role that [he] played in all of this." Nonetheless, the court found that the appropriate sentence in this case was to place Mr. Ortiz on probation because he spent a significant amount of time in custody waiting for trial and then spent a lot of time on electronic monitoring. The court wanted Mr. Ortiz to be able to continue working and also ordered him to attend domestic violence counseling. Accordingly, the court placed Mr. Ortiz on two years of probation.

¶ 34    Mr. Ortiz filed a timely notice of appeal on September 30, 2021. We find that we have jurisdiction to consider the merits of this appeal pursuant to Illinois Supreme Court Rule 606 (eff. Mar. 12, 2021).

¶ 35                                    II. ANALYSIS

¶ 36    On appeal, Mr. Ortiz contends that the court erred in failing to admonish him of his right to a jury trial before the commencement of the trial. He also asserts that the court erred in restricting his cross-examination of Ms. Colon regarding her pending charge. Next, he maintains that the court erred in viewing the ERI in its chambers. Finally, he contends that the State failed to establish beyond a reasonable doubt that he caused Ms. Colon great bodily harm.

¶ 37                                    A. Jury Wavier

¶ 38    Mr. Ortiz first asserts that the trial court erred in proceeding to a bench trial without first admonishing him of his right to a jury trial and obtaining his signed jury waiver. He maintains that the court's attempt at correcting this error by having him sign a jury waiver form on the second day of trial was insufficient where the court inappropriately used a *nunc pro tunc* order to backdate the waiver to the first day of trial and failed to compensate for the error by informing him that he

could request a jury trial and the court would declare a mistrial and start the trial over. He asserts that, under these circumstances, there was no assurance that his jury waiver was knowing and voluntary.

¶ 39    Before we may address the merits of Mr. Ortiz's contention, we must determine whether the issue has been preserved for appellate review. To preserve a claim for review, a defendant must both object at trial and include the alleged error in a written posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Here, Mr. Ortiz raised the issue in his posttrial motion, but did not object at trial. Mr. Ortiz maintains that we may nonetheless review this error pursuant to the plain error doctrine. "The plain-error rule bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved claims of error in specific circumstances." *People v. Thompson*, 238 Ill. 2d 598, 613 (2010).

¶ 40    The State responds that Mr. Ortiz is estopped from raising this issue on appeal because he affirmatively acquiesced in the procedure, and acquiescence is not subject to the plain error doctrine. See *People v. Stewart*, 2018 IL App (3d) 160205, ¶ 19 ("[A]cquiescence is not subject to the plain-error doctrine). However, we find that acquiescence does not apply in this case. The rule that acquiescence is not subject to the plain error doctrine is based on the principle that:

> "a party cannot complain of error which that party *induced* the court to make or to which that party consented. The rationale behind this well-established rule is that it would be manifestly unfair to allow a party a second trial upon the basis of error which that party *injected into the proceedings*." (Emphases added.) *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004).

Although Mr. Ortiz and his counsel acquiesced in the trial court's delayed jury trial admonishment and waiver procedure, they did not induce the court into failing to give the admonishments before the commencement of trial, which is the error Mr. Ortiz now complains of. Accordingly, we find that we may proceed with the plain-error analysis.

¶ 41     The plain error doctrine:

> "permits a reviewing court to consider unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Sargent*, 239 Ill. 2d 166, 189 (2010).

The first step of plain error review is to determine whether any error occurred, which requires a substantive review of the issue. *People v. Walker*, 232 Ill. 2d 113, 124-25 (2009).  If error is found, the court then proceeds to consider whether either of the two prongs of the plain error doctrine have been satisfied. *Sargent*, 239 Ill. 2d at 189-90. The defendant bears the burden of persuasion under both prongs. *Id.* at 190. Accordingly, we will first address whether the court erred in admonishing Mr. Ortiz and accepting his signed jury waiver after the commencement of the trial.

¶ 42     Both the federal and Illinois constitutions guarantee a criminal defendant's right to a trial by jury. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §§ 8, 13; *People v. Reed*, 2016 IL App (1st) 140498, ¶ 7. A defendant may waive his right to a jury trial, but that waiver must be knowingly and voluntarily made in open court. 725 ILCS 5/103-6 (West 2018); *People v. West*, 2017 IL App (1st) 143632, ¶ 10. "A court need not give any specific admonishment or advice for

a waiver to be effective; instead, the determination of whether a jury waiver is valid depends on the facts and circumstances of a particular case." *West*, 2017 IL App (1st) 143632, ¶ 10 (citing *People v. Bracey*, 213 Ill. 2d 265, 269 (2004); *People v. Tye*, 141 Ill. 2d 1, 24 (1990)). "The crucial determination is whether the waiving defendant understood that his case would be decided by a judge and not a jury." *Reed*, 2016 IL App (1st) 140498, ¶ 7 (citing *People v. Bannister*, 232 Ill. 2d 52, 69 (2008)). The defendant bears the burden of establishing that his jury waiver was invalid and we review the issue of whether a defendant knowingly and voluntarily waived his right to a jury trial *de novo*. *West*, 2017 IL App (1st) 143632, ¶ 10.

¶ 43    Here, in admonishing Mr. Ortiz of his right to a jury trial, the court explained procedure for a jury trial and Mr. Ortiz confirmed that he understood that procedure. Mr. Ortiz also submitted a signed jury waiver indicating that he was waiving his right to a jury trial. A signed jury waiver is evidence that a jury waiver was knowingly made, but it does not conclusively prove Mr. Ortiz's understanding. *Reed*, 2016 IL App (1st) 140498, ¶ 7. Finally, after the court advised Mr. Ortiz of his right to a jury trial and the procedure for such a trial, the court confirmed that Mr. Ortiz wished to continue his bench trial, "which is a Trial in front of me[.]" Mr. Ortiz indicated that he did. Under these circumstances, Mr. Ortiz's jury waiver is effective where the court ensured that he knew the that the "facts of his case would be determined by a judge and not a jury and the resulting consequences of that decision." *West*, 2017 IL App (1st) 143632, ¶ 10.

¶ 44    Mr. Ortiz maintains, however, that his jury waiver was not valid because he did not waive his right to a jury trial before the beginning of the trial. Mr. Ortiz is correct that the trial court did not admonish him regarding his right to a jury trial before the commencement of the trial. However,

- 17 -

this court has recognized that a defendant's waiver of his right to a jury trial is still valid if it is entered before a finding guilt, provided that the waiver is made knowingly and voluntarily.

¶ 45    For example, in *People v. Lombardi*, 305 Ill. App. 3d 33, 37-38 (1999), the trial court did not admonish the defendant regarding her right to a jury trial until after both parties rested and gave closing arguments. The trial court explained the difference between a jury trial and bench trial and confirmed that the defendant wished to continue with a bench trial. *Id.* at 38-39. After the defendant signed a jury waiver, the court allowed the defendant to reopen proofs and defense counsel presented two additional witnesses. *Id.* at 39. The trial court subsequently found the defendant guilty. *Id.* On appeal, this court found that the defendant knowingly waived her right to a jury trial because defense counsel requested a bench trial in her presence and the defendant signed a written jury waiver before the trial ended. *Id.* at 40. First, the *Lombardi* court noted that the defendant was present before the commencement of the trial when her defense counsel requested a bench trial. *Id.* The court found that the defendant's failure to object to the defense counsel's request for a bench trial established that she knowingly and voluntarily waived her right to a jury trial. *Id.*

¶ 46    The court continued that even assuming this did not constitute a valid waiver of her right to a jury trial before the commencement of her trial, the defendant made a knowing and voluntary waiver of her right to a jury trial before the completion of the trial. *Id.* This court determined that although the trial was near completion, the fact that the trial court admonished the defendant of her right to a jury trial and gave the defendant an opportunity to demand a jury trial established that her waiver was knowingly made. *Id.* at 40-41.

¶ 47    As in *Lombardi*, the record here shows that before the commencement of the trial, defense counsel indicated to the court several times in Mr. Ortiz's presence that the case would proceed to a bench trial. Mr. Ortiz did not object on any of these occasions, and, in fact, on one occasion responded to the court's injury of "bench or jury" with "Bench" before his defense counsel could respond. Under these circumstances, we could find that Mr. Ortiz waived his right to a jury trial before the beginning of the trial without consideration of the post-commencement admonishments.

> "In the case at bar, the colloquy between defense counsel and the trial court [where defense counsel indicated a bench trial] occurred prior to the onset of opening statements by counsel. Defendant was present during the colloquy and failed to object. A defendant, who permits his counsel in his presence and without objection to waive his right to a jury trial, is deemed to have acquiesced in, and is bound by his counsel's actions." *People v. Asselborn*, 278 Ill. App. 3d 960, 962-63 (1996); see also, *West*, 2017 IL App (1st) 143632, ¶ 10 ("A jury waiver is generally valid where defense counsel waives that right in open court and the defendant does not object to the waiver.).

Mr. Ortiz contends that his "mere silence" in response to the trial court's reference to a bench trial does not constitute waiver. However, as discussed, Mr. Ortiz did not merely remain silent, volunteering "Bench" in response to the trial court's inquiries. Moreover, this is not a case, like the authority cited by Mr. Ortiz, where the defendant was not present in court when his counsel represented that he was requesting a bench trial. See *People v. Thornton*, 363 Ill. App. 3d 481, 487 (2006) ("Considering each of defendant's and his counsel's several appearances in this case, it is undisputed that defendant was never present in open court when a jury waiver was discussed.").

¶ 48     Nonetheless, we need not rely on Mr. Ortiz's pretrial conduct to find a valid jury waiver in this case. Even assuming that Mr. Ortiz's pretrial waiver was not valid, his oral and signed waiver made in open court after the trial court's admonishments established his knowing and voluntary waiver of his right to a jury trial. In admonishing Mr. Ortiz of his right to a jury trial, the court explained the procedure for a jury trial and confirmed that Mr. Ortiz wished to continue his bench trial. These admonishments ensured that Mr. Ortiz understood that the facts of his case would be determined by a judge and not a jury and the consequences of that decision. *West*, 2017 IL App (1st) 143632, ¶ 10.

¶ 49     Mr. Ortiz maintains, however, that because the trial court did not admonish Mr. Ortiz regarding his right to a jury trial until after the trial began, the court was required to include additional admonishments like those provided in *Lombardi*. In *Lombardi*, in admonishing the defendant after the close of evidence, the court informed her that if she wished to have a jury trial, the court would declare a mistrial and set the matter for a jury trial. *Lombardi*, 305 Ill. App. 3d at 38. At the request of defense counsel, the trial court continued the matter to give the defendant time to think about whether she wanted to waive her right to a jury trial. *Id.* Mr. Ortiz contends that, in this case, the trial court did not tell him that it would declare a mistrial if he elected to have a jury trial after the bench trial began and did not give him additional time to consider whether to waive his right to a jury trial.

¶ 50     Although the procedure employed by the trial court in *Lombardi* was commendable, there is no suggestion that the extra precautions taken by the trial court were required in order to ensure that the defendant's waiver was knowing and voluntary. As noted, "[a] court need not give any specific admonishment or advice for a waiver to be effective." *West*, 2017 IL App (1st) 143632, ¶

10. In fact, some of the precautions that the trial court took in *Lombardi* were not necessary here because the trial court here noticed the error before the close of evidence. Thus, it was not necessary for the trial court here to reopen the proofs as the trial court did in *Lombardi*. Indeed, Mr. Ortiz has failed to identify any authority, and our research reveals none, that suggests that a trial court is required to issue additional admonishments regarding a defendant's right to a jury trial when those admonishments are given after the commencement of a trial, but before the verdict is rendered. It is that last consideration that serves to distinguish a majority of the authority Mr. Ortiz relies on in support of his argument.

¶ 51 For instance, in *People v. Collins*, 9 Ill. App. 3d 185 (1972), the record was "devoid" of any mention of a jury trial until after a finding of guilt had been entered against the defendant. Indeed, the only mention of a jury waiver came from the trial court stating, " 'There'll be a finding of guilty *** Plea not guilty, jury waived, finding guilty.' " *Id.* at 186. Under these circumstances, this court found that the defendant's convictions must be reversed because the defendant never waived his right to a jury trial in open court. *Id.* Similarly, in *People v. Eyen*, 291 Ill. App. 3d 38, 40-41 (1997), the trial court noticed that the record did not contain a signed jury waiver only after the sentencing hearing. The record indicated that "the trial court neither admonished the defendant as to his right to a jury trial nor confirmed in defendant's presence that defendant had waived his right to a jury trial." *Id.* at 41. On appeal, this court found that the record failed to demonstrate that the defendant made a knowing and understanding waiver his right to a jury trial where the only discussion relating to his right to a jury trial occurred six weeks after the conclusion of his bench trial. *Id.* Moreover, at that discussion, defense counsel explicitly stated that the defendant did not waive his right to a jury trial and the trial court issued no admonishments. *Id.* Thus, *Collins* and

*Eyen* are distinguishable from the case at bar where the court here admonished Mr. Ortiz regarding his right to a jury trial and Mr. Ortiz made a knowing and voluntary jury waiver in open court before the court entered its judgment.

¶ 52    Finally, in *People v. Elders*, 349 Ill. App. 3d 573, 576 (2004), the trial court realized after entering a finding of guilty that the defendant had not submitted a signed jury waiver and the trial court had not admonished him on the record. Defense counsel stated that the defendant "just indicated to me that he wanted a bench trial" and the court stated that the defendant signed a jury waiver in open court. *Id.* at 576-77. On appeal, this court reversed the defendant's conviction, finding that "at the very least, the record must disclose some evidence of some discussion in defendant's presence, *prior to being found guilty*, with respect to a jury waiver." (Emphasis added.). *Id.* at 583. In this case, unlike in *Elders*, the record reveals that Mr. Ortiz was admonished of his right to a jury trial and submitted a signed jury waiver prior to being found guilty.

¶ 53    Mr. Ortiz also contends that the trial court's use of a *nunc pro tunc* order in an attempt to backdate the signed jury waiver to the beginning of trial on October 21, 2020, was improper because a *nunc pro tunc* order can only be used to correct clerical errors to reflect what actually occurred. Mr. Ortiz maintains that the court's attempt to retrospectively obtain the jury waiver through the use of this order was invalid because no jury waiver occurred on October 21, 2020, and there were no clerical errors to correct. As discussed, however, it was not necessary for the court to backdate the order to the beginning of trial because the key consideration is not whether the defendant waived his right to a jury trial before the trial began, but whether the defendant's waiver was knowing, understanding, and voluntarily made before a finding of guilt. In this case, the record shows that it was. Accordingly, the trial court's use of a *nunc pro tunc* order is, at most,

harmless error and did not impact the fairness of Mr. Ortiz's trial. See *People v. McNeal*, 405 Ill. App. 3d 647, 673 (2010) (finding that where a harmless error does not impact the fairness of the defendant's trial, it cannot give rise to plain error).

¶ 54    Accordingly, we find no error and therefore there can be no plain error. *People v. Hudson*, 228 Ill. 2d 181, 199 (2008). Because we find that no error occurred, we must honor Mr. Ortiz's forfeiture of this issue. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010) (citing *People v. Naylor*, 229 Ill. 2d 584, 593 (2008)). Because we find that there was no error resulting from the trial court's acceptance of Mr. Ortiz's jury waiver, we need not address his argument that his trial counsel was ineffective in failing to object to the procedure and preserve the issue for appeal.

¶ 55                              B. Ms. Colon's Cross-Examination

¶ 56    Mr. Ortiz next contends that the trial court erred in restricting his cross-examination of Ms. Colon regarding her pending misdemeanor charge. Mr. Ortiz maintains that the pending charge demonstrated Ms. Colon's incentive to testify falsely in order to curry favor with the State. Mr. Ortiz asserts that the pending charge also would have supported his defense at trial that Ms. Colon caused both her own and H.C.'s injuries because she was intoxicated where the charge was for driving under the influence.

¶ 57    As an initial matter, Mr. Ortiz maintains that this issue was preserved for review because it was raised at trial when defense counsel attempted to question Ms. Colon about the charge and was raised posttrial in the motion for a new trial. The State contends, however, that Mr. Ortiz failed to preserve this issue for review because he did not object at trial when the court prevented the line of questioning and did not raise the specific issue in his posttrial motion. The State also maintains that Mr. Ortiz forfeited this argument because he failed to make an offer of proof at trial. Mr. Ortiz

responds that he was not required to make an offer of proof because the "purpose and materiality" of the evidence was clear.

¶ 58    At trial, the State first discussed Ms. Colon's pending charge during her direct examination. The assistant State's attorney (ASA) confirmed that Ms. Colon had a pending charge, and confirmed that the State did not make her any promises or threats with regard to the pending charge in exchange for her testimony, but merely informed her of the next court date. Ms. Colon also testified regarding a previous DCFS case that stemmed from an incident where Mr. Ortiz called DCFS. As a result of the DCFS investigation, Ms. Colon's children were placed with her mother for a period, but the children were eventually returned to her.

¶ 59    On cross-examination, defense counsel asked Ms. Colon about her pending charge. When defense counsel asked Ms. Colon what the charge was about, the State objected, arguing that the charge had no bearing on the current case. The parties then had a conversation off the record. When the matter came back on the record, the court noted that it had been "apprised of the charge" and did not want Ms. Colon to testify regarding the pending matter because it did not want her to put herself in "jeopardy." The court stated that it "knows what the pending charge is and will take notice of that." Defense counsel did not object to this procedure and stated that he had no further questions for Ms. Colon.

¶ 60    In his motion for a new trial, Mr. Ortiz addressed Ms. Colon's pending charge, arguing that the court erred in taking notice of facts not in evidence when it took notice of Ms. Colon's pending charge. In arguing on the motion for a new trial, Mr. Ortiz's posttrial counsel observed that it appeared that trial counsel intended to question Ms. Colon regarding the pending charge to challenge her credibility; however, posttrial counsel did not know the nature of the charge because

it was not in the record. The court clarified that the charge was for driving under the influence. In denying the motion for a new trial, the court stated that it did not want defense counsel to ask Ms. Colon about the pending charge because of her rights against self-incrimination. However, the court stated that it understood that defense counsel was attempting to impeach Ms. Colon regarding her substance abuse issues and impugn her credibility.

¶ 61    Thus, the record shows that defense counsel did not object at trial and posttrial counsel did not raise the precise issue that Mr. Ortiz now raises with regard to Ms. Colon's testimony. The posttrial contention argued that the court took notice of facts not in evidence, while Mr. Ortiz now contends that the court improperly limited his cross-examination. In addition, because defense counsel did not object at trial, he failed to make an offer of proof. "When a line of questioning is objected to or denied by the trial court, the defendant must set forth an offer of proof either to convince the trial court to allow the testimony or to establish on the record that the evidence was directly and positively related to the issue of bias or motive to testify falsely." *People v. Tabb*, 374 Ill. App. 3d 680, 689 (2007). Mr. Ortiz contends, however, the requirement that a party make an offer of proof is not absolute. "[A]n offer of proof is not required if it is apparent that the trial judge understood the nature of the objection and the character of the evidence sought to be introduced or if the questions themselves and circumstances surrounding them show the purpose and materiality of the evidence." *Carter v. Azaran*, 332 Ill. App. 3d 948, 956 (2002). In this case, the court stated that it understood that defense counsel was attempting to introduce the evidence of Ms. Colon's pending charge to bolster the claim that she had substance abuse issues, in an effort to undercut her credibility. Mr. Ortiz now contends, however, that he was attempting to introduce the evidence to demonstrate Ms. Colon's bias and motive to testify falsely so that she could receive leniency

from the State on her pending charge. This is clearly a separate consideration from the arguments raised at trial. Indeed, the ASA asked Ms. Colon whether the State had made her any promises or threats with regards to the pending charge in exchange for her testimony against Mr. Ortiz, and Ms. Colon testified that the State did not. It does not appear from the record that defense counsel was attempting to impeach Ms. Colon on that testimony when he questioned her about the pending charge and was solely seeking to introduce the fact that Ms. Colon had a charge for driving under the influence to support his theory that Ms. Colon had a substance abuse problem. Thus, without an offer of proof demonstrating otherwise, we cannot say that this claim of error was properly preserved.

¶ 62    Mr. Ortiz contends, however, that we may nonetheless review this claim of error under the plain error doctrine. As discussed, the first step in addressing a plain error contention is to determine whether an error occurred, which requires a substantive look at the issue. *Naylor*, 229 Ill. 2d at 593 (citing *People v. Johnson*, 208 Ill. 2d 53, 64 (2003)).

¶ 63    "A defendant has the right to cross-examine a witness concerning bias, interest or motive to testify falsely." *People v. Kilner*, 185 Ill. 2d 81, 134 (1998) (citing *Davis v. Alaska*, 415 U.S. 308, 316 (1974)). "Evidence that a witness has been arrested or charged with a crime is a proper subject for cross-examination where it would reasonably tend to show that the witness' testimony might be influenced by bias, interest or motive to testify falsely." *People v. Davis*, 185 Ill. 2d 317, 337 (1998). The trial court, however, has wide latitude to impose reasonable limits on cross-examination, and the confrontation clause does not prevent a trial court from imposing limits on defense counsel's inquiry into potential bias of a witness. *Kilner*, 185 Ill. 2d at 134.

¶ 64    Before addressing whether any error occurred, we must again discuss the disconnect between the apparent reason for this line of questioning on cross-examination at trial and the basis that Mr. Ortiz now raises on appeal. It appeared to be the trial court's understanding that defense counsel sought to cross-examine Ms. Colon about the pending charge to further his theory that she had a substance abuse problem. There is no indication in the record that defense counsel was attempting to cross-examine Ms. Colon regarding her bias, interest, or motive to testify falsely. Defense counsel did suggest that Ms. Colon agreed to cooperate with the State on this case because she was facing a DCFS investigation, but defense counsel was permitted to cross-examine Ms. Colon on that topic and it was a separate consideration from the pending driving under the influence charge.

¶ 65    Nonetheless, we find that the trial court did not err in limiting defense counsel's cross-examination of Ms. Colon. To the extent that defense counsel sought to elicit testimony regarding Ms. Colon's substance abuse, there was extensive testimony regarding her drinking and marijuana use. Moreover, the court took notice of Ms. Colon's pending charge. Mr. Ortiz contends that Ms. Colon actually had 11 pending charges, but the trial court referred only to a singular "charge." The record shows, however, that defense counsel informed the trial court of all of the charges before closing arguments. The court stated that "Mr. Ortiz's attorney let me know it wasn't just a single charge, there—it was one case but several charges with it, [he] made me aware of what those are so I am fully apprised and I am now aware of that and I thank him for bringing that to my attention." The court was therefore aware of all of Ms. Colon's charges before entering its judgment.

¶ 66    Accordingly, we find that the trial court did not abuse its discretion in limiting defense counsel's cross-examination of Ms. Colon on the pending charges. Where there is no error, there

can be no plain error. *Hudson*, 228 Ill. 2d at 199. We therefore honor Mr. Ortiz's forfeiture of this issue. *Hillier*, 237 Ill. 2d at 545. Because we find that there was no error resulting from the trial court's limitation of cross-examination, we need not address Mr. Ortiz's argument that his trial counsel was ineffective in failing to preserve the issue for appeal.

¶ 67                     C. Electronically Recorded Interview

¶ 68     Mr. Ortiz next contends that the trial court violated his due process rights when it watched the entire ERI in chambers without informing Mr. Ortiz that he had the right to be present during the presentation of that evidence. Mr. Ortiz also contends that the court erred in considering evidence outside the record when it relied on portions of the ERI that were not introduced at trial to impeach his testimony. Mr. Ortiz maintains that because the ERI was introduced only for the limited purpose of impeaching his testimony, the court was only permitted to consider the portions of the ERI that contained the statements that Mr. Ortiz made to the police that were inconsistent with his trial testimony.

¶ 69     As with Mr. Ortiz's previous claims of error, we must observe that Mr. Ortiz failed to preserve this issue for review by both objecting and trial and raising the issue in his posttrial motion. *Enoch*, 122 Ill. 2d at 186. Indeed, as discussed, defense counsel stated that he had no objection to the court viewing the ERI in chambers, and Mr. Ortiz also confirmed that he had no objection to the procedure. The purpose of the forfeiture rule is to bring claimed errors to the attention of the trial court and give the court an opportunity to correct the error. *Thompso*n, 238 Ill. 2d at 612. Had Mr. Ortiz done so, the trial court could have had an opportunity to either explain to Mr. Ortiz his right to be present or could have devised a different procedure for it to review the ERI. Nonetheless, Mr. Ortiz once again contends that we may review this claim as plain error. As

discussed, the first step in addressing a plain error contention is to determine whether an error occurred, which requires a substantive look at the issue. *Naylor*, 229 Ill. 2d at 593.

¶ 70 "A criminal defendant has the right to be personally present at critical stages of the proceedings against him or her if his or her presence would contribute to the fairness of the procedure." *People v. Rodriguez*, 2022 IL App (1st) 200315, ¶ 102; U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 8. This right is not absolute, however, and a defendant is only "guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if [his or her] presence would contribute to the fairness of the procedure." (Internal quotation marks omitted.) *People v. Lindsey*, 201 Ill. 2d 45, 57 (2002) (citing *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987)). Even though a defendant has the right to be present at a critical stage of the proceedings, the defendant's absence is not a *per se* constitutional violation. *Id.* "Rather, a defendant's absence from such a proceeding will violate his constitutional rights only if the record demonstrates that defendant's absence caused the proceeding to be unfair or if his absence resulted in a denial of an underlying substantial right." *Id.* Some of these substantial rights include the right to confront witnesses, the right to present a defense, and the right to an impartial jury. *Id.* (citing *People v. Bean*, 137 Ill. 2d 65, 84 (1990)). We review *de novo* the question of whether a defendant's absence affected the fairness of his trial. *People v. Lucas*, 2019 IL App (1st) 160501, ¶ 13.

¶ 71 Here, the State introduced portions of Mr. Ortiz's ERI during its cross-examination of his testimony in order to impeach him. Following the testimony of Detective Mayas in rebuttal, the State moved the ERI into evidence and the defendant raised no objection. The court stated that it needed to watch the video before making its ruling. The ASA clarified:

"[ASSISTANT STATE'S ATTORNEY]: Judge, just so it's clear, for the record, the defense has no objection to you watching the video?

[DEFENSE COUNSEL]: We stated that, Judge. There's no objection.

THE COURT: Okay. So, Mr. Ortiz, in between now and the next court date, the video of your statement with the Detective, I'll just watch that on my computer.

Your attorney has seen it. The State's Attorney has seen it; and then, when we come back in December, I'll have seen that, plus heard all of the evidence; and then each side can make their argument.

All right?

[MR. ORTIZ]: Okay.

THE COURT: And is that all right with you—

[MR. ORTIZ]: Yes.

THE COURT: —if I watch it outside of your presence?

[MR. ORTIZ]: Yes."

Mr. Ortiz maintains that although he agreed to the court's suggested procedure, the court erred because it did not inform him that he had the right to be present and therefore he could not waive a right he did not understand. He also maintains that defense counsel was not permitted to waive his right to be present.

¶ 72    Irrespective of waiver considerations, we find that the trial court did not err in watching the video outside of Mr. Ortiz's presence. Because Mr. Ortiz's absence is not a *per se* constitutional violation, the question of whether his absence violated his constitutional rights turns on the specific facts and circumstances of this case. *Lindsey*, 201 Ill. 2d at 57. In this case, Mr. Ortiz was able to

fully participate in his defense and was present for trial and the presentation of the evidence. Mr. Ortiz was able to respond to the portions of the ERI the State used in its impeachment and was able to testify on his own behalf. Mr. Ortiz was present when Detective Mayas testified regarding the ERI, and neither Mr. Ortiz, nor his defense counsel objected when the entire ERI was admitted into evidence.

¶ 73    We find this court's ruling in *People v. Aquisto*, 2022 IL App (4th) 200081 instructive. In *Aquisito*, as here, the defendant contended that the trial court violated his due process right to be present by viewing the video of his post-arrest interrogation outside of his presence. *Id.* ¶ 72. The *Aquisito* court found that the "defendant offer[ed] no convincing explanation of how his presence in chambers during the viewing of the postarrest video would have contributed to the fairness of the procedure." *Id.* ¶ 84. The *Aquisito* court also found that the trial court did not violate the defendant's right to be present because the defendant knew the contents of the video: "Since the video was of defendant's being interviewed by the police, he must have known what was in the video." *Id.*

¶ 74    Here, too, Mr. Ortiz has failed to explain how his presence in chambers while the trial judge watched the video would have contributed to the fairness of the procedure. Mr. Ortiz maintains that if he had been present while the trial judge viewed the ERI, he could have gauged the judge's reaction to the recording and testified in surrebuttal to explain his demeanor in the video. Mr. Ortiz has failed to demonstrate, however, that the trial judge would have physically reacted to the video in his presence or viewed the video with anything but impartiality. *People v. Bartels*, 2022 IL App (3d) 190635, ¶ 25. Under these circumstances, Mr. Ortiz's presence would have been " 'but a shadow.' " *Lindsey*, 201 Ill. 2d at 57 (quoting *Bean*, 137 Ill. 2d at 84); *Snyder v. Commonwealth*

*of Massachusetts*, 291 U.S. 97, 106-07 (1934) ("Nowhere in the decisions of this court is there a dictum, and still less a ruling, that the Fourteenth Amendment assures the privilege of presence when presence would be useless, or the benefit but a shadow."). Moreover, like the defendant in *Aquisito*, Mr. Ortiz must have known what was on the video because he was the subject of the interview. He therefore cannot maintain that he was not aware of the evidence contained therein.

¶ 75     We find Mr. Ortiz's reliance on *Lucas*, 2019 IL App (1st) 160501 unpersuasive. In that case, the trial judge viewed a video of the traffic stop in chambers with both parties' attorneys, but outside the presence of the defendant. *Id.* ¶¶ 5, 6. In finding the defendant guilty, the court commented on her driving and demeanor during the traffic stop. *Id.* ¶ 7. This court reversed the defendant's convictions finding that her absence from the viewing of the video "affected the trial's fairness because she was unable to view the evidence against her and aid in her own defense." *Id.* ¶ 14. This court found that although the defendant and her attorney agreed to the video viewing procedure, the court did not inform her that she had a right to be present and therefore could not waive that right. *Id.* The court emphasized that it was not sufficient that the defendant knew the video existed, but "she needed to know the video's contents." *Id.* ¶ 20.

¶ 76     It is that last point that serves to distinguish *Lucas* from the case at bar and *Aqusito*. Here, Mr. Ortiz knew the contents of the ERI because he participated in the interview and therefore had firsthand knowledge of its contents. See also *People v. Duckworth*, 2021 IL App (4th) 180740-U, ¶ 116 (unpublished order pursuant to Supreme Court Rule 23) ("In contrast [to *Lucas*], here, the audio recording was of defendant's sworn statements during a bankruptcy proceeding—an event of which defendant had firsthand knowledge and there is no indication he was 'under the influence' at the time of the recording."). In contrast, the video in *Lucas* captured the interaction between the

defendant and a police officer from a point of view that was not shared by the defendant. Thus, the circumstances of this case show that Mr. Ortiz's absence while the court watched the ERI was not a violation of Mr. Ortiz's constitutional rights because his presence would not have contributed to the fairness of procedure and because Mr. Ortiz was aware of all of evidence against him. *Lindsey*, 201 Ill. 2d at 57. We therefore find no error warranting plain error review and we honor Mr. Ortiz's forfeiture of this issue. *Hudson*, 228 Ill. 2d at 199; *Hillier*, 237 Ill. 2d at 545.

¶ 77    In addition, we reject Mr. Ortiz's contention that the trial court erred in considering facts not in evidence when it cited his statements in the ERI in its ruling because the entire ERI was admitted into evidence. Mr. Ortiz maintains that his trial counsel rendered ineffective assistance by not objecting to the admittance of the entire ERI and should have argued that only the portions that contained the impeaching statements should have been admitted. However, Mr. Ortiz cannot show that he was prejudiced by any alleged deficient performance on trial counsel's part because the evidence and the court's ruling is clear that it would have found Mr. Ortiz guilty despite its consideration of the entire ERI. In order to succeed on a claim of ineffective assistance of counsel, a defendant must show that he was prejudiced by counsel's performance, *i.e.*, that "there is a reasonable probability that the result of the trial would have been different [if] counsel had not committed the errors complained of." *People v. Hayes*, 353 Ill. App. 3d 578, 584 (2004) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). If we can dispose of a claim of ineffective assistance of counsel on the basis that the defendant suffered no prejudice, we need not determine whether counsel's performance was deficient. *People v. Carlisle*, 2019 IL App (1st) 162259, ¶ 77 (citing *People v. Graham*, 206 Ill. 2d 465, 476 (2003)). We observe, however, that "[t]he decision to object to the admission of evidence is a strategic one and generally may not form the basis of a

claim of ineffective assistance of counsel." *People v. Mister*, 2016 IL App (4th) 130180-B, ¶ 94 (citing *People v. Perry*, 224 Ill. 2d 312, 344 (2007)).

¶ 78    Here, Mr. Ortiz has failed to show that there was a reasonable probability that the result of his trial would have been different if his trial counsel had objected to the admission of the entire ERI because the record shows that the trial court found Ms. Colon credible, and did not find Mr. Ortiz or his mother credible. Ms. Colon's testimony, which the court found credible, and the State's other witnesses, presented all of the necessary evidence to find Mr. Ortiz guilty of the charged offenses. See *People v. Sauls*, 2022 IL 127732, ¶ 52) ("The positive, credible testimony of a single witness, even if contradicted by the defendant, is sufficient to convict a defendant."). Although the court found Mr. Ortiz not credible in part because his testimony contradicted his statements to Detective Mayas in the ERI, Mr. Ortiz does not contest the admissibility of the impeaching statements that informed this finding. Thus, Mr. Ortiz has failed to show that the result of his trial would have been different if trial counsel had objected to the admission of the entire ERI and therefore has failed to establish that he was prejudiced by trial counsel's allegedly deficient performance.

¶ 79                                    D. Great Bodily Harm

¶ 80    Finally, Mr. Ortiz contends that the State failed to prove beyond a reasonable doubt that he caused great bodily harm to Ms. Colon. Where a defendant challenges the sufficiency of the evidence to sustain his conviction, the reviewing court must consider whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004). This standard recognizes the responsibility of the trier of fact to determine the

credibility of the witnesses and the weight to be given their testimony, to resolve any conflicts and inconsistencies in the evidence, and to draw reasonable inferences from the evidence. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). A reviewing court must allow all reasonable inferences from the record in favor of the State, and will not overturn the decision of the trier of fact unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt. *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011); *People v. Smith*, 185 Ill. 2d 532, 542 (1999).

¶ 81    Here, the trial court found Mr. Ortiz guilty of aggravated domestic battery. A person commits aggravated domestic battery when "in committing a domestic battery, [he or she] knowingly causes great bodily harm." 720 ILCS 5/12-3.3(a) (West 2018). "The term 'great bodily [harm]' *** is not susceptible of a precise legal definition but it is an injury of a graver and more serious character than an ordinary battery." *People v. Kinnerson*, 2020 IL App (4th) 170650, ¶ 69 (quoting *People v. Costello*, 95 Ill. App. 3d 680, 684 (1981)). A physical beating may qualify as such conduct that could cause great bodily harm. *Id.* ¶ 70. "[A] person may suffer serious bodily injury even when the injuries result in 'no lasting effect on the health, strength, and comfort of the injured person.' " *Id.* (quoting *People v. Smith*, 6 Ill. App. 3d 259, 264 (1972)). "Whether the victim's injuries rise to the level of great bodily harm is a question for the trier of fact." *People v. Garry*, 323 Ill. App. 3d 292, 297 (2001).

¶ 82    Here, the evidence established that Ms. Colon suffered a beating that caused significant injuries to her face. Ms. Colon testified that she experienced "a lot" of pain around her eye. Ms. Rodriguez testified that when she saw Ms. Colon after the altercation, she had "two black eyes and one of her eyes was bloodshot red. The cornea was almost a hundred percent red ***." The State

introduced into evidence photographs depicting the injuries. In its ruling, the court described Ms. Colon's injuries as "severe." In addition, Dr. Iwanik testified that she reviewed Ms. Colon's X-ray, which revealed multiple facture lines along the floor of her right orbital bone. Mr. Ortiz contends that Dr. Iwanik did not know when the injury to Ms. Colon's orbital bone occurred or the cause of the injury, so the evidence did not establish that Mr. Ortiz caused this injury. As noted, however, the trial court, as the finder of fact, is permitted to draw reasonable inferences from the evidence. In this case, it was a reasonable inference that Mr. Ortiz caused the fractures to Ms. Colon's orbital bone where there was significant evidence of injuries to Ms. Colon's eye from the beating inflicted by Mr. Ortiz.

¶ 83    Mr. Ortiz contends, however, relying on *In re J.A.*, 336 Ill. App. 3d 814 (2003), that the State was required to present evidence of injuries that are more serious than lacerations, bruises, or abrasions. We find this court's ruling in *Kinnerson*, 2020 IL App (4th) 170650 instructive. In *Kinnerson*, the defendant was found guilty of aggravated domestic battery and argued, *inter alia*, that the State failed to prove beyond a reasonable doubt that the victim suffered great bodily harm. *Id.* ¶ 1. At trial, the State presented evidence that the victim suffered a beating "which caused significant injuries to her face." *Id.* ¶ 71. The victim told the 9-1-1 dispatcher that the beating caused her "to urinate on herself and resulted in a 'busted lip' and two black eyes." *Id.* the State also presented evidence from individuals who observed the victim's injuries and photographs depicting the injuries. *Id.* A paramedic testified that the victim had a "very swollen face," her right eye was "completely swollen shut," and her left eye was "about three quarters of the way swollen shut." This court determined that given the evidence presented, including the photographs of the

victim's injuries, a rationale trier of fact could have found that the defendant inflicted great bodily harm on the victim. *Id.* ¶ 72.

¶ 84    Like Mr. Ortiz here, the defendant in *Kinnerson* relied on *J.A.* in contending that the victim's injuries were not sufficiently serious to constitute great bodily harm. *Id.* ¶ 73. This court rejected the defendant's argument noting that the only evidence of great bodily harm presented in *J.A.* was evidence of a " 'a single stab wound of indeterminate size, which [the victim testified felt like a 'pinch'] and for which an indeterminate number of stitches were advised by someone unnamed.' " *Id.* ¶ 73 (quoting *In re J.A.*, 336 Ill. App. 3d 818-19). This court determined that the circumstances in *J.A.* were "significantly distinguishable" because the State in *Kinnerson* presented "sufficient evidence, in the form of both testimony and photographs, to establish both the severity of the attack on [the victim] and the nature and extent of her injuries." *Id.* ¶ 74.

¶ 85    Here, too, we find that the State presented sufficient evidence in the form of both testimony and photographs to establish the severity of Ms. Colon's injuries. As discussed, the evidence showed severe damage to both of Ms. Colon's eyes and the photographs, some of which were taken 10 days after the incident, reflect swelling and bruising. This evidence is far more substantial than the vague evidence of the injury presented in *J.A.*

¶ 86    We also reject Mr. Ortiz's contention that the State presented insufficient evidence of Ms. Colon's post-injury treatment and recovery to prove great bodily harm. In support of that contention, Mr. Ortiz relies on *In re Vuk R.*, 2013 IL App (1st) 132506. In *Vuk R.*, the victim testified that the defendant struck him several times with his fists, breaking his nose and causing him to lose consciousness. *Id.* ¶ 4. On review, this court found that the victim and his father testified "in summary fashion" about the injuries and the State introduced photographs of the injuries, but

the photographs were not included in the record filed on appeal. *Id.* ¶ 9. This court also observed that "[t]here was no evidence presented regarding any pain suffered by the victim (other than that he was given pain medication), the details of the victim's treatment for his injuries or how long after the incident he suffered the effects of those injuries." *Id.* ¶ 9. Under these circumstances, the *Vuk R.* court determined that the State had failed to prove great bodily harm beyond a reasonable doubt. *Id.*

¶ 87    We find the circumstances in *Vuk R.* both factually and legally distinguishable. First, the trial judge in *Vuk R.* made "no findings of fact," but simply pronounced the defendant guilty. *Id.* ¶ 6. At the defendant's sentencing hearing, however, the court stated that: "As far as I am concerned on both the government's case and the defense case, every one of those witnesses lied." *Id.* ¶ 6. Under these circumstances, this court found that this was not the typical sufficiency of the evidence case stating, "Were this just a case involving the trial court's assessment of the credibility of witnesses with differing versions of events, we would affirm under the well-settled standard of review that accords great deference to a trial judge's resolution of factual disputes." *Id.* ¶ 5.

¶ 88    Here, the circumstances before us do provide "a case involving the trial court's assessment of the credibility of witnesses with differing versions of events." Notably, the trial court found Ms. Colon's injuries to be "severe," a determination that that was in its discretion to make. In addition, other decisions of this court have criticized the *Vuk R.* decision for ignoring supreme court precedent regarding the standard of review (*People v. Walker*, 2020 IL App (3d) 170395-U, ¶ 35 (unpublished order pursuant to Supreme Court Rule 23) ("This necessarily overlooks the supreme court's emphasized directive to determine whether " '*any* rational trier of fact' " could find that the evidence presented established the elements of the charged offense.) (Emphasis in original)

(quoting *People v. Collins*, 106 Ill. 2d, 237, 261 (1985))) or have declined to follow the case entirely (*People v. Moore*, 2019 IL App (3d) 160639, ¶ 25 ("However, we are not required to follow the decision of the *Vuk R.* court, and we decline to do so.")). We recognize this court's long-standing precedent that the relevant inquiry is "not what the victim did or did not do to treat the injury but what injuries the victim in fact received." *People v. Edwards*, 304 Ill. App. 3d 250, 254 (1999); see also *People v. Figures*, 216 Ill. App. 3d 398, 401 (1991) (whether the victim's injuries rise to the level of great bodily harm is "neither dependent upon hospitalization of the victim, nor the permanency of his disability or disfigurement"). We conclude that a rational trier of fact could find that the evidence presented of Ms. Colon's injuries established great bodily harm.

¶ 89                              III. CONCLUSION

¶ 90    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 91    Affirmed.